UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ZIMMER US, INC.,

   Plaintiff,

v.

BRYAN MILLER,

   Defendant.

Case No. 3:23-CV-263 JD

## OPINION AND ORDER

The Plaintiff, Zimmer US, Inc. (d/b/a Zimmer Biomet) has moved for the Court to enter a preliminary injunction[1] against defendant Bryan Miller to prohibit him from further violations of the non-competition agreement he signed with them. (DE 4.) For the following reasons, the motion will be granted.

**A. Factual Background**

Zimmer Biomet is a business entity engaged in the development, manufacture, and sale of a variety of devices and services related to orthopedic reconstructive, trauma, bone healing and surgical devices. A large portion of Zimmer's customer base are the surgeons who use their products, and Zimmer accordingly expends considerable resources to build and maintain goodwill with those surgeons and the medical facilities they practice at. As part of this effort, Zimmer utilizes the services of sales representatives such as Mr. Miller to develop and maintain business relationships with clients.

---

[1] While captioned as a motion for a temporary restraining order ("TRO"), the Court found this motion to actually be one for a preliminary injunction. (*see* DE 7.)

Mr. Miller began his employment as a sales associate for Apex Surgical, LLC, in February 2018. (DE 1 at ¶¶ 2, 17.) Apex Surgical is an independent distributor for Zimmer Biomet and uses sales representatives to market and sell Zimmer products and services. (*Id.* at ¶¶ 2, 17.) As a sales representative Mr. Miller was assigned to cover a geographic territory which included Western Pennsylvania and Eastern Ohio. (*Id.* at ¶ 17.) He was responsible for developing relationships with several Zimmer Biomet customers including Advanced Surgical Hospital in Washington, Pennsylvania. (*Id.* at ¶ 29.) In performing his duties, Mr. Miller was given access to confidential and proprietary information about Zimmer Biomet's and Apex Surgical's business.[2] (*Id.* at ¶¶ 18–19.) As a condition of his employment with Apex, Zimmer Biomet required Mr. Miller to executive a non-competition and non-solicitation Agreement. Mr. Miller executed that agreement on February 13, 2019. (DE 1-1 at 5.)

The Agreement includes non-competition and non-solicitation provisions. The non-competition provisions require that during Mr. Miller's employment and for a period of one-year after, he cannot engage in "Competitive Activity" in any geographical area he covered during the 18-month period preceding his separation from employment. (DE 1-1 at 1). "Competitive Activity" is defined by the Agreement as including "(i) any activity of the type in which Sales representative was engaged on behalf of [Apex Surgical] at any time during the eighteen (18) month period preceding the termination of Sales Representative's engagement that is competitive with the business of Zimmer Biomet products." *Id.*

The non-solicitation provisions require that during Mr. Miller's employment and for a period of one-year after, he cannot solicit or provide competing services to sell any competing

---

[2] For convenience, throughout this order the Court may refer to Zimmer as Mr. Miller's former employer even though his actual employer was Apex Surgical. This has no bearing on the legal analysis of the Agreement between Miller, Apex, and Zimmer.

2

products with any "Protected Customer." (DE 1-1 at 1–2.). "Protected Customer" is defined by the Agreement as any person or corporation "serviced, sold to, approached or solicited…by [the] Sales Representative…, during any part of the eighteen (18) month period preceding the termination of Sales Representative's engagement , or…about which Sales Representative obtained, learned or developed Confidential Information (as defined herein) during Sales Representative's engagement." (DE 1-1 at 2.)

Zimmer alleges that Mr. Miller violated these two restrictive covenants before and following his resignation from Apex on March 19, 2023. (DE 1 at ¶ 25.) Zimmer specifically alleges that immediately after his resignation, he began a position with b-ONE Ortho, Corporation, a direct competitor of Zimmer, in a sales capacity similar to his former role with Apex. (*Id.* at ¶¶ 3, 26–27.) Zimmer alleges Mr. Miller violated the Agreement on March 20, 2023, the day after he resigned, by providing services for b-ONE at Advanced Surgical Hospital. (*Id.* at ¶¶ 29–30.) Advanced Surgical Hospital being a client which he had previously serviced on behalf of Zimmer. (*Id.* at ¶ 29.) Apex sent Mr. Miller a letter on March 21, 2023, reminding him of his obligations under the Agreement and demanding he cease his violations. (*Id.* at ¶ 34.) Mr. Miller did not respond to the letter and allegedly continued to violate the Agreement by providing products and services on b-ONE's behalf at Advanced Surgical Hospital on March 31, 2023. (*Id.* at ¶¶35–36.)

Zimmer also alleges that prior to his resignation, Mr. Miller was diverting Advanced Surgical Hospital business to b-ONE. Zimmer alleges that Mr. Miller emailed a nurse at Advanced Surgical Hospital nine days prior to his resignation stating that "all hips at Advanced will be the new company B1. This starts Monday the 13th. I have all the patients [*sic*] info." (*Id.* at ¶ 32, DE 1-2.)

### B. Legal Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 24 (2008) (internal citations omitted). To obtain a preliminary injunction, a plaintiff must make four showings: (1) without this relief it will suffer "irreparable harm"; (2) traditional legal remedies would be inadequate; (3) it has some likelihood of prevailing on the merits of its claims, and (4) that the balance of harms weighs in favor of granting the injunction. *Speech First, Inc. v. Killeen*, 968 F.3d 628, 637 (7th Cir. 2020) (quoting *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018)). Regarding the balancing phase, if the plaintiff is likely to prevail on the merits, the balance of harms need not weigh as heavily in her favor. *Id.* (internal citations omitted). The balancing phase also considers the public interest, or "the effects the preliminary injunction—and its denial—would have on nonparties." *Id.*

### C. Discussion

The Court will begin by resolving whether the need for a preliminary injunction is moot. The Court will then advance to the merits of Zimmer's motion.

#### (1) *Mootness*

Mr. Miller's response to the motion indicates he and his employer, while not necessarily agreeing with Zimmer Biomet's interpretation of the Agreement, have taken steps to avoid

conduct which offends the Agreement as interpreted by Zimmer Biomet.[3] (DE 12 at 3.) Mr. Miller argues the need for a preliminary injunction has been mooted by his actions.

The standard for whether a preliminary injunction is moot is whether there is a reasonable expectation that the alleged wrong will be repeated. *Lucini Italia Co. v. Gappolini*, 288 F.3d 1035, 1038 (7th Cir. 2002) (citing *Wilk v. American Med. Ass'n*, 895 F.2d 352, 367 (7th Cir. 1990)). The burden of persuasion for this proposition lies with the defendant. *Id.*

Mr. Miller offers two affidavits as evidence to establish the wrong will not be repeated. First, is the affidavit of Danny Egerton who is the U.S. National Director of Sales for b-ONE. Mr. Egerton's affidavit indicates he has recommended that Miller stay outside of his old territory, and avoid soliciting any business from Zimmer Biomet clients or customers he worked with during his late 18 months at Apex. (DE 12-2 ¶¶ 9–10.) Second, is Mr. Miller's own affidavit. Mr. Miller indicates he told b-ONE management he will not perform any services in the same territory as he previously handled for Apex (DE 12-1 ¶¶ 5, 13.) He also indicates he will not solicit any business from Zimmer Biomet clients or customers he worked with during his last 18 months at Apex. (*Id.* at ¶ 14.)

Zimmer argues in their reply that this assurance by Mr. Miller is not enough to carry his burden and show that the need for a preliminary injunction is moot. The Court agrees and finds that the governing caselaw suggests a greater showing is required. The voluntary cessation of an allegedly illegal activity does not automatically make an issue moot, because the party may begin the activity again. *Silver Streak Indus., LLC v. Squire Boone Caverns, Inc.*, 2014 WL

---

[3] The Court assumes for purposes of the mootness analysis, that Mr. Miller's conduct of shadowing Mr. Egerton violates the non-competition agreement. The Court recognizes Mr. Miller's objection to this interpretation of the agreement by Zimmer and will address that issue on the merits section of this order.

5

220682, *5 (S.D. Ind. Jan. 21, 2014); *see also Lucini*, 288 F.3d at 1038 ("a request for an injunction, preliminary or otherwise, simply is not mooted because the parties have, for the course of the litigation and by their own agreement, maintained the status quo.").

Mr. Miller's promise of voluntary cessation, by itself or along with the recommendation of his employer, is not sufficient evidence to create a reasonable expectation that the conduct will not be repeated. *Silver Streak Indus.*, 2014 WL 220682, at *5. Rather, the caselaw suggests the need for some evidence that Mr. Miller had a motive to cease the challenged activity other than the lawsuit. *See E.E.O.C. v. Flambeau, Inc.*, 846 F.3d 941, 949 (7th Cir. 2017) (finding the need for a preliminary injunction was moot as there was a reasonable expectation the conduct would not be repeated when the defendant had ceased the challenged conduct well before the lawsuit began and for reasons unrelated to the lawsuit);

Given this precedent, the Court finds that Mr. Miller's promise that he would abstain from violating the terms of the non-competition agreement, and his supervisor's recommendation Mr. Miller avoid such violations, cannot carry his burden.[4] Consequently, the issue is not moot.

### (2) *Merits of the Motion*

As previously discussed, Zimmer must establish four elements to show they are entitled to a preliminary injunction: (1) without this relief it will suffer "irreparable harm"; (2) traditional legal remedies would be inadequate; and (3) it has some likelihood of prevailing on the merits of its claims, and if those three are shown, (4) that the balance of harms weighs in favor of granting

---

[4] The Court has no occasion to determine whether a binding command of Mr. Miller's employer would be sufficient to carry the burden. As the record stands, Mr. Miller's employer has only given him a recommendation on how to proceed.

the injunction. *Killeen*, 968 F.3d at 637. The Court will begin with Zimmer's likelihood of success on the merits of its case.

    *(i) Zimmer has shown it is likely to prevail on the merits of its claims*

    The first step in determining whether Zimmer is likely to succeed on the merits of its case involves determining whether the restrictive covenant at issue is legally enforceable.

    The substantive law governing this case is the law of the State of Indiana. In the Agreement, the parties agreed to submit to Indiana law regardless of any forum's choice-of-law rules to the contrary. (DE 1-1 at 3). The parties do not dispute the choice of law.

    Indiana law generally disfavors non-competition agreements as restraints on trade. *Gleeson v. Preferred Sourcing, LLC*, 883 N.E.2d 164, 172 (Ind. Ct. App. 2008). Nonetheless, restrictive covenants may be enforced where they protect legitimate business interests and the restrictions established by the agreement are reasonable as to time, activity, and geographic area. *Coates v. Heat Wagons, Inc.*, 942 N.E.2d 905, 913 (Ind. Ct. App. 2011). Legitimate business interests include the protection of customer goodwill and protection of confidential information. *Id.*; *see also Zimmer US, Inc. v. Keefer*, 2012 WL 5268550, at *1 (N.D. Ind. Oct. 23, 2012) (finding Zimmer's restrictive covenant protected the legitimate business interest of preventing former sales representatives from stealing their clients or lending unfair advantage to its competitors).

    The parties do not dispute that the Agreement was in effect at the times relevant to this litigation and Mr. Miller does not contest the agreement's restrictions are reasonable as to time, and geographic area. The Court independently finds that these restrictions are reasonable. In terms of temporal scope, Indiana courts have upheld restrictive covenants as long as 18 months

or two years which make the one-year agreement here reasonable. *Keefer*, 2012 WL 5268550, at *8 (collecting Indiana cases and finding a one-year contract to be reasonable). As to geographic area, the scope of the restriction is reasonable as it is limited to the geographic area of Eastern Ohio and Western Pennsylvania where Mr. Miller worked. *Krueger*, 882 N.E.2d at 730–31 (finding restriction was reasonable as to the counties where the employee worked); *Gleeson*, 883 N.E.2d at 175 (finding a 150-mile radius restriction reasonable as it was limited to where the employee had solicited business).[5]

In terms of restricted activity, Mr. Miller contests whether the Agreement is reasonable as it pertains to the limit on his ability to shadow a b-ONE representative during a hospital visit which included observing a surgery to implant a b-ONE product. The Court interprets Mr. Miller's silence as to the substance of the rest of the Agreement as conceding the Agreement is generally a reasonable restriction that is legally enforceable.[6] In particular, the Court interprets Mr. Miller's silence as a concession that the Agreement reasonably restricts his ability to divert customers away from Zimmer to a competitor, including by using confidential information he obtained while a Zimmer employee. Given Mr. Miller's concession that the activities covered by

---

[5] The Court would note that if there are clients within his geographic region of operations that Mr. Miller did not work with, this geographic restriction might be unreasonable because it covers those clients. *See Keefer*, 2012 WL 5268550, at *9 (finding a 60-mile radius of Altoona, PA restriction was unreasonable when that radius included client accounts the defendants had never worked with). As there is nothing in the record to suggest this particular issue is at play here, the Court will find the geographic restriction to be reasonable.

[6] Mr. Miller, in a single sentence, seems to argue that if this application of the Agreement is unreasonable then the entire Agreement must be struck as unenforceable. (DE 12 at 6.) However, this argument is only supported by a single citation which is inapposite to that proposition and this case. (DE 122 at 6 (citing *Prod. Action Int'l, Inc. v. Mero*, 277 F. Supp. 2d 919, 933 (S.D. Ind. 2003).) *Mero* supports the proposition that the blue pencil doctrine does not allow a court to add terms to a contract to render it enforceable, but they are allowed to strike terms. 277 F. Supp. 2d at 928. It is unclear how that applies to this case given the issue seems to be whether the shadowing activity meets the definition of Competitive Activity in the Agreement and not whether an express term of the contract must be replaced. (*See* DE 12 at 5–6, disputing whether the shadowing meets the Agreement's definition). Moreover, this argument is undeveloped as it is only a single conclusory sentence. *Shipley v. Chi. Bd. of Election Comm'rs*, 947 F.3d 1056, 1062–63 (7th Cir. 2020) (arguments which are underdeveloped are waived).

8

the Agreement are generally enforceable, the Court will defer addressing the disputed provision until necessary.

The Court independently finds that a restriction on the ability to divert clients is reasonable. In determining whether a restrictive covenant reasonably limits activity by a current or former employee, the key inquiry is whether the restriction only extends far enough to protect Zimmer's legitimate business interests. *See Gleeson*, 883 N.E.2d at 176–77. Specifically, a restriction is usually reasonable if it only prevents an employee from working in a directly competitive capacity analogous to the one in which they worked for the employer. *Keefer*, 2012 WL 5268550, at *11 (citing *Gleeson*, 883 N.E.2d at 175–76). This restriction is reasonable as it directly protects Zimmer's legitimate business interest of protecting relationships with customers and not being forced into unfair competition with its rivals. *Coats*, 942 N.E.2d at 913; *Keefer*, 2012 WL 5268550, at *1.

Having found that the Agreement is enforceable, the Court turns to whether Zimmer is likely to prevail on the merits of their case. Zimmer argues that it has shown a likelihood of succeeding on the merits because the record shows Mr. Miller violated his non-competition agreement by using his employee email to solicit or direct business to b-ONE.

Mr. Miller argues that Zimmer has no likelihood of succeeding on the merits because his observation of the orthopedic procedure does not constitute competitive activity as precluded by the Agreement. That may well be the case, but for purposes of this motion it does not matter. Mr. Miller has waived Zimmer's other alleged violation that he began recruiting clients to b-ONE while still employed at Zimmer. As discussed above, Mr. Miller seems to have been using his Zimmer email account to divert business to b-ONE before joining b-ONE. Zimmer argues this solicitation violated the terms of the non-competition agreement. Mr. Miller's response does not

address these arguments. Mr. Miller's failure to respond to this argument results in waiver. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010). Bearing that fact in mind, the Court has no trouble concluding Zimmer has a strong likelihood of prevailing on the merits of their case given Mr. Miller was actively recruiting Zimmer clients to b-ONE while he was a Zimmer employee.[7]

(ii) *Irreparable harm*

Zimmer argues they would suffer irreparable harm to their business operations and their relationships with clients from Mr. Miller's violation of the agreement. Precedent of the Seventh Circuit supports this contention. "Irreparable harm" for purposes of a preliminary injunction or TRO means harm that cannot be prevented or fully rectified by the final judgment after trial. *Roland Mach. Co. v. Dressler Indus., Inc.,* 749 F.2d at 380, 386 (7th Cir. 1984). Phrased another way, the harm cannot be easily quantified and made whole with monetary damages following a trial. *Turnell v. CentiMark Corp.*, 796 F.3d 656, 666 (7th Cir. 2015). The Seventh Circuit has recognized that injures which flow from a non-competition agreement violation are difficult to prove and quantify and a "canonical form of irreparable harm." *Turnell*, 796 F.3d at 666.

Mr. Miller makes two arguments on this element. First, that this issue is moot given Mr. Miller's recent assurances that he will no longer be engaging with his former clients. Second,

---

[7] At this stage in the proceedings, given Mr. Miller's uncontested violation of the Agreement by directing business from Zimmer, the Court need not determine whether Mr. Miller's behavior of shadowing a b-ONE sales representative during surgery meets the definition of competitive activity laid out in the Agreement. This is particularly so since Mr. Miller and b-ONE agree he will not shadow a sales representative in a manner that could constitute a violation of the agreement. Additionally, the Court finds that the parties' briefing on this specific issue is less than thorough. *See, e.g.,* DE 14 at 5 (asserting without analysis that Mr. Miller's mere presence in a room with his former customers threatens Zimmer Biomet's goodwill with those customers). Therefore, the Court will defer ruling on this issue until it becomes necessary and is fully briefed.

Mr. Miller's limited activity of observing a surgery does not constitute past harm and Zimmer has accordingly suffered no harm at all.

For the reasons stated in the prior section of this order, the Court finds that Mr. Miller's assurances are not enough to moot the need for a preliminary injunction. Consequently, his first argument here will fail here as well. Turning to his second argument, Mr. Miller's focus on his job shadowing neatly side steps the other violation of him soliciting Zimmer clients for b-ONE while he was serving as a Zimmer employee. As previously explained, Mr. Miller emailed existing Zimmer clients to direct business to his future employer. Mr. Miller's response brief does not dispute he sent those emails, nor does he dispute Zimmer's characterization that sending them violated his non-competition agreement, which in turn caused or risks irreparable harm to Zimmer.

(iii) *Traditional legal remedies would be inadequate*

Zimmer argues traditional legal remedies would be inadequate to remedy its harm because it is difficult to calculate the monetary damages caused to its business and business relationships resulting from a violation of a non-competition agreement. Injunctions are designed to offer relief when legal remedies were unavailable or inadequate to protect the parties' rights. *Keefer*, 2012 WL 5268550, at *11 (citing *Roland Machinery Co. Dresser Indus., Inc.,* 749 F.2d 380, 397 (7th Cir. 1984) (Swygert, J. dissenting)). The Agreement itself recognizes that potential violations would be irreparable harms that could not be adequately addressed by monetary damages alone. (DE 1-1 ¶ 10.) The Indiana Supreme Court has held that it is "virtually impossible to quantify" the damage caused by an employee's breach of a non-competition agreement. *Cent. Indiana Podiatry P.C. v. Krueger*, 882 N.E.2d 723, 733 (Ind. 2008). For the

same reasons the Indiana Court of Appeals has consistently found that a preliminary injunction is the appropriate remedy for any such breach. *Id.* (collecting cases). This Court finds the same here.

           (iv) *The balance of harms*

Zimmer faces great potential harm unless the Court issues the preliminary injunction. Mr. Miller has taken a position with a firm that directly competes with Zimmer in a role almost identical to his one with Zimmer. Mr. Miller also carries knowledge of Zimmer's products and operations, combined with his experience and relationship in the community and with the clients he managed on Zimmer's behalf. All these things mean Mr. Miller could create a significant competitive advantage for b-ONE. At the same time, Mr. Miller would also be harmed as he cannot use, at least temporarily, the business relationships he has spent years cultivating. However, Mr. Miller remains free to use his general skills as a salesperson outside the narrow group he previously worked with as a Zimmer employee. Notably, Mr. Miller and his supervisor have filed affidavits indicating that in light of this litigation, Mr. Miller will focus on recruiting new clients or operating in areas different from the ones he covered for Zimmer. This is strong evidence that Mr. Miller will still be able to earn a livelihood while abiding by the terms of the Agreement and mitigating any harm he might suffer from a preliminary injunction.

Further, while balancing the harms it is useful to refer back to the plaintiff's likelihood of success on the merits. *Abbott Labs v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir. 1992) ("the more likely it is the plaintiff will succeed on the merits, the less the balance of irreparable harms need weight towards its side"). While the balance of harms favors Zimmer, even if the balance of harms in this case was equal, the strength of Zimmer's underlying case means the Court finds it

is highly likely that Zimmer will succeed on the merits. Consequently, the balance need not weigh heavily in Zimmer's favor to warrant an injunction.

The final question in balancing the harms is whether the preliminary injunction will harm the public interest. *Killeen*, 968 F.3d at 637. Non-competition agreements are generally disfavored as a matter of law and public policy. *Gleeson*, 883 N.E.2d at 172. But that concern is alleviated when the employer has asserted a legitimate interest that they are entitled to protect and where the non-competition agreement is reasonable in scope. *Id.* Phrased another way, when a non-competition agreement passes the legal tests and is enforceable, it is no longer against public interest to enforce it. *Id.* Given Zimmer's restrictive covenant is legally enforceable, and they have a strong likelihood of success on the merits, the Court finds that a preliminary injunction is not against the public interest.

**D. Conclusion**

Accordingly, the Court GRANTS Zimmer's motion for a preliminary injunction. (DE 4.) To the extent that the defendant may yet prevail, the Court will order a bond posted to lessen the chance that he will be harmed without recourse by the injunction. The Court ORDERS that defendant Bryan Miller is enjoined from the following, for the duration of the term set out in the Agreement, or until this order is dissolved, and pending final resolution of the case:

1. Engaging, on his own or on behalf of any other person (including b-ONE Ortho, Corp.), in any Competitive Activity in any geographical area previously covered by Miller, or in which Miller previously engaged in Marketing Activity during any part of the eighteen (18) month period preceding Miller's resignation from his employment with Apex

Surgical. This provision will not preclude Mr. Miller from shadowing b-ONE employees for training purposes[8];

2. soliciting, providing or offering to provide competing services, selling or offering to sell any Competing Product to, taking away, or entering into any compensation arrangement with any Protected Customer, including but not limited to Advanced Surgical Hospital and the surgeons who practice there; and

3. using and/or disclosing Zimmer Biomet's Confidential Information in any unauthorized manner.

Additionally, although Zimmer requests that this injunction be entered without them posting a bond or security, the Court disagrees. Federal Rule of Civil Procedure 65(c) states: "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." The Seventh Circuit has cautioned that judges should "take account of the risks their deeds create," even in cases where the parties to a disputed contract have waived entitlement to an injunction bond. *Roche Diagnostics Corp. v. Med. Automation Sys.*, Inc., 646 F.3d 424, 428–29 (7th Cir.2011). Therefore, this order will become effective upon the plaintiff positing with the Clerk of Court the sum of, or a surety for, $1,000 to serve as bond for the injunction.[9]

---

[8] In accordance with the Court's earlier deferral of ruling on whether shadowing constitutes competitive activity, and considering Mr. Miller's amenability to avoiding former Zimmer clients, the Court does not find it necessary to enjoin Mr. Miller from training activities. Should Zimmer become aware of behavior by Mr. Miller using this carve out to evade the restrictions of this injunction in the future, Zimmer may move for a modification of this order. Any such motion should thoroughly brief the activity at issue and explain how it meets the definition of competitive activity laid out in the Agreement and how the restriction is reasonable under governing case law. *See Keefer*, 2012 WL 5268550, at *11 (citing *Gleeson*, 883 N.E.2d at 175–76).

[9] Neither party discusses potential bond amount or specific losses tied to Mr. Miller's actions, or losses he would suffer from an injunction. Zimmer's complaint indicates Mr. Miller's former sales

The bond will ensure that the defendant is compensated for their injury if Zimmer does not prevail on the merits.

SO ORDERED.

ENTERED: June 6, 2023

/s/ JON E. DEGUILIO
Chief Judge
United States District Court

---

territory generated sales in excess of $2 million over an unspecified time period. (DE 1 ¶ 6.) In light of the strength of Zimmer's likelihood of success on the merits, and the fact a single sales representative was netting them $2 million in revenue, the Court finds the sum of $1,000 is enough to satisfy the purpose of Rule 65(c) without imposing any considerable financial hardship on Zimmer Biomet. *See Zimmer, Inc. v. Sharpe*, 2009 WL 10690836, at *5 (N.D. Ind. Mar. 31, 2009) (granting a preliminary injunction for a non-competition agreement violation with a $1,000 bond).